**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X

KATHLEEN LEE,                                  :
                                            :
                        Plaintiff     :        Civil Action No.:
                                            :
            v.                                :
                                            :        **COMPLAINT**
TWENTY-FIRST CENTURY FOX, INC., FOX :
NEWS NETWORK LLC, MITCH DAVIS, in his :
individual and professional capacities, HANK :
WEINBLOOM, in his individual and professional :       **Jury Trial Demanded**
capacities, and DENISE COLLINS, in her :
individual and professional capacities, :
                                            :
                        Defendants.     :
------------------------------------------------------------ X

Plaintiff Kathleen Lee brings this Complaint against Twenty-First Century Fox, Inc. ("21st Century Fox"), Fox News Network LLC ("Fox News," and, together, "Fox" or the "Company"), Mitch Davis ("Davis"), Hank Weinbloom ("Weinbloom"), and Denise Collins ("Collins") (collectively with Fox, "Defendants") and hereby alleges as follows:

## SUMMARY OF THE CLAIMS

1.     Female employees at Fox have a problem. When they are subjected to sexual harassment and discrimination, Fox does nothing to curb the unlawful behavior. Worse, when female employees dare report such conduct, Fox victimizes them a second time – by subjecting them to escalated sex bias, retaliation, or both.

2.     Kathleen Lee is a Fox News Radio Network ("Fox News Radio") employee targeted by a male co-worker, Ron Flatter ("Flatter") and subjected to his unrelenting sexual harassment.

3.     When Ms. Lee reported Flatter's behavior to Davis, Vice President of Fox News Radio, he warned her against telling Human Resources ("HR") and said the "Flatter problem"

must be dealt with "internally, at Radio."  When Flatter's sexual harassment escalated, Davis again warned Ms. Lee to stay silent and "deal with it."

4.      Only after the problem intensified to the point where Flatter physically threatened Ms. Lee's personal safety did she disobey Davis and report the problem to Collins, the head of HR.  After Ms. Lee reached out to HR, Collins, along with Davis and Bernie Pigott ("Pigott"), the former News Director for Fox News Radio, ignored Ms. Lee, looked the other way and failed to act.

5.      Shockingly, Fox executives allowed Ms. Lee to beg for their help on a regular and consistent basis for another eleven (11) months without action.  Fox's standard charade of protecting male harassers at the expense of victims had severe consequences for Ms. Lee.

6.      Thanks to Fox, Flatter was provided another opportunity to subject Ms. Lee to a horrific threat of bodily harm at the workplace.  Ms. Lee paid this price because she mistakenly believed that Fox would act responsibly and stop Flatter.

7.      Stories about Fox's inexcusable conduct are becoming a familiar narrative. Recently, Jessica Golloher, a female employee at Fox News Radio, commenced an action against Fox, Davis and Weinbloom, alleging gender discrimination and retaliation for her attempt to complain about sexual harassment.  In Jessica Golloher v. Twenty-First Century Fox, Inc. et al., Index No. 154148/2007, filed on May 4, 2017, Ms. Golloher alleged that less than 24 hours after she attempted to lodge a formal complaint about gender discrimination, Davis called Ms. Golloher and fired her.  Without any reasonable basis, Davis told Ms. Golloher that her termination was necessary due to budget constraints.

8.      On May 18, 2017, just 14 days after Ms. Golloher's complaint was filed, Davis abruptly announced his "retirement" from Fox.  On a conference call, which omitted Ms.

Golloher from the "roll call" despite being a participant, Davis feebly told employees that despite the "recent craziness," he had been planning his retirement for months.

9.      As detailed below, for years, Davis and other senior Fox executives allowed a misogynistic culture to run rampant through Fox News Radio.  Unwilling to stand by in silence any longer, Ms. Lee intends to hold Fox, and her individual managers, accountable for the senseless and unlawful discrimination she has suffered.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as Ms. Lee is a resident of Bergen County, New Jersey and Defendants Twenty-First Century Fox, Inc. and Fox News Network LLC are Delaware corporations with their principal place of business in New York County, New York.  Defendant Mitch Davis resides in Westchester County, New York, Defendant Hank Weinbloom resides in Nassau County, New York, and Defendant Denise Collins resides in New York County, New York.  There is compete diversity.

11.     Pursuant to 28 U.S.C. § 1332(a), the amount in controversy, exclusive of costs and interest, is in excess of $75,000.

12.     Additionally, this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law, and subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.

13.     This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

15.     Simultaneous with this filing, Plaintiff will submit a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  After receiving her right to sue, Plaintiff will seek to amend this Complaint to add claims for Defendants' violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*., as amended by the ADA Amendments Act (the "ADA").

16.     Pursuant to New York City Human Rights Law ("NYCHRL") § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

17.     Plaintiff has complied with any and all other prerequisites to filing this action.

## PARTIES

18.     Plaintiff Kathleen Lee is a resident of Bergen County, New Jersey.  Ms. Lee is an employee of Fox at its principal place of business, 1211 Avenue of the Americas, New York, New York. At all relevant times, Ms. Lee meets the definition of an "employee" under all applicable statutes.

19.     Defendant Twenty-First Century Fox, Inc. is duly organized and existing under and by virtue of the laws of the State of Delaware, and has its principal place of business at 1211

Avenue of the Americas, New York, New York.  At all relevant times, Twenty-First Century Fox, Inc. has met the definition of an "employer" of Plaintiff under all applicable statutes.

20.     Defendant Fox News Network LLC is a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, and has its principal place of business at 1211 Avenue of the Americas, New York, New York.  Fox News Network LLC is a wholly owned subsidiary of Twenty-First Century Fox, Inc.  In or about 2003, Fox created a radio division, Fox News Radio, that broadcasts from Fox's principal place of business located at 1211 Avenue of the Americas, New York, New York.  At all relevant times, Fox News Network LLC has met the definition of an "employer" of Plaintiff under all applicable statutes.

21.     Defendant Mitch Davis resides in Westchester County, New York.  Defendant Davis has worked at Fox News for over twelve years and currently is a Vice President of Fox News Radio.  In this capacity, he supervises multiple employees, including Ms. Lee.  At all relevant times, Defendant Davis has met the definition of an "employer" of Plaintiff under all applicable statutes.

22.     Defendant Hank Weinbloom resides in Nassau County, New York.  Defendant Weinbloom has worked at Fox News for over fifteen years and currently is a Director of News Programming for Fox News Radio.  In this capacity, he supervises multiple employees, including Ms. Lee.  At all relevant times, Defendant Weinbloom has met the definition of an "employer" of Plaintiff under all applicable statutes.

23.     Defendant Denise Collins resides in New York County, New York.  Defendant Collins is employed at Fox as the Head of HR.  Defendant Collins has worked as the head of HR at Fox for more than a decade.  At all relevant times, Defendant Collins has met the definition of an "employer" of Ms. Lee under all applicable statutes.

## FACTUAL ALLEGATIONS

### Ms. Lee's Employment at Fox News Radio

24.     In 2005, Ms. Lee was hired to work in the radio division at Fox.  Before that time, Ms. Lee worked as a freelancer for a number of highly regarded media outlets, including CNN, MSNBC and ABC.

25.     Fox promoted Ms. Lee quickly up the ranks, eventually placing her into the role of full time shift editor.  Ms. Lee has worked as a shift editor for more than seven years, often as the only female shift editor.

26.     At all relevant times, Ms. Lee reported to Davis, Pigott, and Weinbloom.

27.     At all relevant times, Davis reported to Jay Wallace ("Wallace"), President of News.  Davis, Pigott and Weinbloom were longtime Fox News Radio employees who regularly interacted with senior Fox executives, including the late Roger Ailes, former Fox News co-president Bill Shine ("Shine"), former chief financial officer Mark Kranz, Executive Vice President of Business and Legal Affairs Dianne Brandi ("Brandi"), and President of Programming Suzanne Scott.

### Radio Anchor Ron Flatter Creates a Sexually Hostile Work Environment

28.     In or about late 2012 – early 2013, Flatter was hired to anchor daytime broadcasts for Fox News Radio.  Prior to joining Fox, Flatter worked as a radio anchor for ESPN New York, and reported on world sports for RSN927 in Melbourne, Australia.

29.     From the beginning of his employment at Fox, Flatter openly disparaged, condescended and yelled at other employees.  A belligerent, loud and egotistic individual, Flatter was easily enraged and prone to tirades.  The volume of his voice, coupled with his large stature, made Flatter's outbursts impossible to ignore within the Fox News Radio newsroom.

30.    Flatter was relentless in his continued and repeated criticisms of co-workers, reserving a heightened level of criticism towards female employees.

31.    Flatter displayed his blatant disdain for women, especially women with leadership responsibilities, on a daily basis.  He regularly used sexually explicit and inappropriate language. By way of example only:

- Flatter referred to a female anchor as the "Title 9 Anchor;"
- Flatter openly called female employees, including Ms. Lee, "sluts" and "whores;"
- Flatter openly and regularly criticized female anchors and loudly disparaged their physiques, body shapes, attractiveness, including their hair;
- Flatter particularly criticized female anchors with blond hair, calling them the "new blonds;"
- Intending to disparage Davis, Flatter yelled throughout the newsroom, "I am such an important *cog* in the operation …. rather, such an important ***Cock*** in the operation.;"
- Flatter referred to Hilary Clinton as Hillary "Clit-on;"
- Flatter would "time" how long it took Ms. Lee to use the ladies restroom;
- Flatter repeatedly called Ms. Lee "useless;"
- Flatter regularly called Ms. Lee "Mata Hari," in reference to Margaretha Geertruida Zelle, a female spy for France during World War I, who was accused of being a double agent and executed;
- When Ms. Lee would leave the studio, Flatter would yell, "Sayonara Mata Hari;"
- Flatter mocked Ms. Lee using his "silly girl voice;"
- Flatter referred to Ms. Lee as Weinbloom's "*girl*;"
- Flatter referred to Weinbloom as a "pussy;"
- Flatter referred to two accomplished female reporters as "*those girls* with short hair who do TV," and claimed he "cannot tell them apart;"
- Seemingly minor events would send Flatter into tirades, such as when he had to report on a *women's* soccer story;
- Flatter engaged in raunchy commentary on female anchor Andrea Tantaros; and
- Flatter created a clip disparaging Andrea Tantaros entitled "Tantaros is LOOSE" and continuously loops a cut during a broadcast.

**Flatter is Violent**

32.     Flatter regularly talked about extreme violence and looked for opportunities to discuss violence within the newsroom and during his broadcasts.

33.     Physically large and with a booming voice, Flatter's continuous references to violence were unsettling and disturbing to all employees, but especially to females.   Such behavior was intimidating to women, including Ms. Lee, especially when she was forced to work shifts with Flatter, was the only female employee present, and considered the *de facto* manager. By way of example only:

- In reference to a man who jumped over the White House fence, Flatter said on air, "wouldn't it be great if during his live shot some dog came up and ripped his face off;"
- During a broadcast on 9/11, knowing that Ms. Lee lost two cousins in the World Trade Center collapse, Flatter repeatedly talked about death and dying and continuously looked over to Ms. Lee to make sure she heard;
- Flatter repeatedly referred to Fox News Radio's newsroom as "ISIS;"
- On air, Flatter said, "since we are all now working for ISIS – send your holiday requests to AL Jazeera America;"
- Flatter said beheadings are "funny;"
- Flatter inappropriately yelled such things as, "beware it could be a 3-JIHAD day;"
- Flatter called Weinbloom, "Bin Laden;"
- Intending only that Ms. Lee hear him, Flatter made a physical threat in connection with a male co-worker who was also physically large; and
- During a broadcast, Flatter said, "I hope I see Eddie Something so I punch him in the face."

34.     Unquestionably, Pigott, Davis and Weinbloom were present on many occasions when Flatter made violent and sexist comments.   However, on many instances, Ms. Lee was forced to work evening shifts with Flatter when no one senior to her was present, causing Ms. Lee to act as the manager for that particular shift.

35.     Because the executives in charge of Fox News Radio condoned Flatter's unlawful conduct, other male employees were emboldened to similarly demean and threaten female co-workers.  By way of example only, during an evening shift while Ms. Lee was eating, another anchor, Bill Vitka ("Vitka"), said in a threatening manner that he hopes Ms. Lee "choke[s] to death."

36.     The incident was so outrageous and shocking that a female co-worker immediately emailed Davis about what happened, labeling the subject "Could you please address this?" and wrote:

> "This behavior is so distressing. Vitka said to Kathleen Lee 'You can't answer my question because you are eating a sandwich. I hope you choke to death and answer my fucking question first.' No one should have to deal with abuse like that. And it upsets all of us. Please address this ASAP.  I wanted to say something to him but did not. It is disgraceful and unprofessional."

37.     Davis did nothing.  The following day, Vitka grabbed Ms. Lee by the arm, forced her away from others and berated her again.  Vitka was never disciplined.

**Flatter Uses Ms. Lee's Physical Disability as Another Source of Harassment**

38.     Flatter shamelessly used Ms. Lee's physical disabilities to mock and harass her further.  Ms. Lee was born with a rare genetic disorder that caused fusion in parts of her vertebrae, resulting in scoliosis and restrictions to her neck and right shoulder.  Additionally, she was born with heart conditions and one kidney.   In recent years, her condition has caused excessive blood clots and increased heart problems.  In a horrific display of Flatter's cruelty, he often singled out her condition by:

- Openly calling Ms. Lee an "invalid"
- Regularly, when Ms. Lee walked by, he would say, "there goes the invalid"
- Constantly referring to the chair Ms. Lee used to help with her spine as the "invalid's chair"

- Repeatedly calling Ms. Lee, "Leak-y" to her face and in front of other employees.

39.     Flatter's focus on Ms. Lee's physical limitations was exacerbated by the fact that Davis also mocked Ms. Lee due to her condition.  Davis similarly called Ms. Lee "Leaky," and mocked her "special" chair.

40.     In a display of blatant viciousness, Davis intentionally sat on Ms. Lee's right-side, knowing that it was difficult for her to turn her neck to the right without shifting her entire body.

**Fox Ignores Ms. Lee's Multiple and Continuous Complaints of Discrimination**

41.     Despite a shocking number of instances in which Ms. Lee made protected complaints about the sexually hostile environment, executive leadership at Fox intentionally ignored her.

42.     Shortly after Flatter began working at Fox, Ms. Lee voiced her concerns to Davis. Thereafter, Ms. Lee complained in person to Davis and Pigott, and sent numerous emails.

43.     Outrageously, Pigott and Davis used her complaints about Flatter as opportunities to marginalize her value even further and threatened Ms. Lee to stay away from HR.

44.     Disturbingly, during a shift in or about April 2013, Flatter flew into such a rage over an editing change that he ran over to Ms. Lee, and towering over her, inches from her face, yelled and screamed so aggressively that she feared for her personal safety.   Ms. Lee immediately told Davis about this incident.

45.     Davis failed to discipline Flatter.  Instead, the only person he threatened to discipline was Ms. Lee.  Specifically, Davis warned Ms. Lee to keep the details about her near physical assault "internal" to him and Pigott.  Davis cautioned Ms. Lee not to seek help from HR.

46.     By early July 2014, Ms. Lee had emailed Davis many times and included specific examples of Flatter's sexually harassing conduct.   Notably, Ms. Lee indicated that she desperately needed to meet with Davis to discuss Flatter.   Davis made weak excuses for his unavailability.

47.     By late August 2014, with no prospect of a meeting with Davis to discuss Flatter, Ms. Lee again reached out to Pigott.   Ms. Lee emailed Pigott that Flatter's behavior had "crossed numerous lines."   She explained that Flatter continued to reach "new levels of unprofessional conduct" and that she would like to discuss specific instances in person with Pigott.

48.      Pigott dismissed Ms. Lee by stating that Davis was taking the "lead on this," and Pigott was not getting involved.

49.     After almost three months of repeatedly requesting in-person meetings with Davis or Pigott to discuss Flatter, in late September 2014, Ms. Lee emailed Collins and said that she needed to speak in person with Collins or someone else at HR about Flatter.

50.     Ms. Lee provided Collins with a plethora of details regarding Flatter's conduct that highlighted the severity of his behavior and the glaring distress Ms. Lee was experiencing. By way of example only:

- Ms. Lee emailed Collins about Flatter's "intimidating, crude, demeaning, etc." conduct;
- Ms. Lee told Collins that Flatter's conduct was a result of Ms. Lee's gender;
- In emails, Ms. Lee told Collins that she has difficulty sleeping due to Flatter's conduct and that she was exceedingly "worried about" Flatter meeting with Collins, Davis or both about her complaints;
- In connection with Flatter's anticipated anger following such a meeting, Ms. Lee asked Collins, "[w]ould managers be available in the event something unsavory or confrontational does occur?;"
- If Collins wanted Ms. Lee to be present in a meeting with Flatter, Ms. Lee asked, "[c]an a woman please be present during the meeting?;"

- Having already experienced retaliation, Ms. Lee was clearly concerned that HR's involvement would escalate the situation when she wrote, "If there are ugly repercussions from him towards me, I am praying someone high up is available to sit down Wednesday.;" and

- Ms. Lee also wrote to Collins, "Did someone tell Ron we have spoken? I ask this because Bernie my direct supervisor will barely look at me at this point."

51. Despite the manifest harassment that Flatter was inflicting on Ms. Lee, Collins failed to take any action and waited another four weeks after Ms. Lee reached out before she scheduled a meeting with Flatter.

52. The day before the planned meeting, Ms. Lee wrote to Davis and described an incident that day with Flatter's anger level rising to the degree that his screaming caused her heart palpitations. She told Davis that she was "literally scared to come in here tomorrow."

53. On or about October 23, 2014, Collins and Davis met with Flatter. During the shift that evening, Flatter proceeded to laugh incessantly about his HR "meeting" with the purpose of Ms. Lee seeing his reaction. Ms. Lee emailed Collins to tell her about Flatter's portrayal of the meeting.

54. Davis, Pigott and Collins failed to inform Ms. Lee about what was said to Flatter, whether any disciplinary action was taken or if Ms. Lee's schedule could be changed to distance her from Flatter.

55. In sum, Fox left Ms. Lee in an even more precarious position than she was before she engaged in protected complaints. Fox forced Ms. Lee to continue to work shifts with Flatter on a daily basis. Worse, many evenings Ms. Lee was the *de facto* manager in charge with no higher-level supervisors present, allowing Flatter to indulge in whatever discriminatory conduct he was in the mood to unleash.

12

56.     Significantly, once Flatter knew that Ms. Lee had complained about his behavior to his superiors, his vitriol was unmerciful and Collins, Davis and Pigott allowed it to continue unabated.

57.     Flatter believed that continued harassment was permissible because Fox failed to discipline him in any way, and other male employees, including those senior to Flatter, also engaged in misogynistic behavior.  During this relevant time, for example:

- When Bill Shine visited the Fox News Radio newsroom he told Ms. Lee that "her only *use* to him" was when she "gives him tea or remembers to roll on SKY;"
- Bill Shine also said loudly for all employees to hear that Ms. Lee's "shoutdown" was just "too Sexy;"
- Davis regularly demeaned women generally and made inappropriate comments to female employees, such as asking a female anchor whether she had "more Victoria's Secret" to report about and when he made a number of sexual insinuations about a relationship he fantasized between Ms. Lee and a very young female intern; and
- One day Davis raced out of his office and told the newsroom staff, including Ms. Lee and other women present, about an Australian TV station that was airing live sex.  Davis excitedly described the show to his employees.

58.     As alleged in Ms. Golloher's complaint, it was common knowledge among Fox News Radio employees that before coming to Fox, Davis was fired from ABC amid claims of possible pornography, including allegations of pornography involving an underage female.

**Fox Ignores Ms. Lee for Another Eight Months**

59.     Incredulously, Fox ignored and marginalized Ms. Lee for another eight months. During this time, Ms. Lee repeatedly asked for help and continued to provide Fox with detailed evidence of Flatter's unlawful conduct.

60.     In return, Collins forced Ms. Lee to maintain handwritten notes about Flatter's conduct and turn over these original notes to Collins on a regular basis.

61.     Collins never returned the notes to Ms. Lee or provided her with copies.  Based on the detailed facts from Ms. Lee to Collins that documented that Flatter's discrimination was continuous and unceasing, Fox's failure to act is all the more reprehensible.

62.     During these months, Collins would force Ms. Lee to sit in her office to talk about her handwritten notes in front of Davis.  Collins would challenge Ms. Lee about specific details she provided and ask her to explain to Davis.  Ms. Lee was uncomfortable discussing her complaints with Davis present and told Collins.  Worse, Davis would intentionally sit to the right of Ms. Lee knowing that he could look at and communicate through facial expressions and gestures to Collins without Ms. Lee seeing because it was extremely difficult for her to turn her neck to the right side.  As such, she was not able to observe the non-verbal conduct Davis engaged in during these meetings.

63.     From October 2014 through June 2015, Ms. Lee begged Collins, Davis and Pigott to address Flatter or to take other action, including changing Ms. Lee's schedule to prevent her from being left alone with Flatter.  Ms. Lee's repeated pleas for help fell on deaf ears.

64.     The number of times Ms. Lee requested help to curb Flatter's relentless sexist bullying is too voluminous to list here.  In addition to multiple verbal requests to Collins and Davis, Ms. Lee sent emails to Collins, Davis and finally, to Brandi and Wallace.  By way of example only, in late January 2015, Ms. Lee called out Collins and Davis for their repeated failure to respond and wrote,

> "[Flatter's] behavior is shockingly bad and I cannot believe what I am both seeing and dealing with" and "I don't understand why no one cares about this ... it's as bad as 2 years ago when I first went to powers at Radio to express my concerns. My managers have been aware of this problem for a very long time."

65.     Believing that she had to go a level above Collins, Davis and Pigott, on April 21, 2015, Ms. Lee emailed Brandi about Flatter.

66.     Unquestionably, Brandi was placed on notice of the severity of sexual harassment being inflicted on Ms. Lee as she admits to contemplating hiring outside counsel.  For example, Ms. Lee wrote to Brandi:

> "I have some deepening concerns about my situation here …before contacting outside counsel, I would truly like to speak to someone…the treatment towards me by my direct supervisors has changed significantly, …it is now unrecognizable."

67.     Ms. Lee told Brandi about the extreme retaliation she faced since first reporting Flatter.  Brandi completely ignored Ms. Lee.

68.     Frustrated and demoralized, Ms. Lee started to lose confidence for the first time in her career.  Further, Ms. Lee questioned whether she could continue working at Fox without risking her safety.

69.     After more than a year of complaints, Ms. Lee understood that Fox intended to take no action to curb Flatter's conduct.  By way of example only, in or about early May 2015, Ms. Lee emailed Collins:

> "My direct supervisor takes no interest whatsoever anymore in providing a safe atmosphere within which to work… I am writing to basically beg you to expedite a meeting with Jay Wallace to help solve the ever growing problems in radio- before something really terrible happens. Lastly, I am working with Ron for several hours tonight and quite frankly- I am petrified because [Flatter's] outbursts are both unpredictable and uncontrollable."

70.     In or about early June 2015, when shockingly Pigott told Ms. Lee that she must write a "review" about Flatter, Ms. Lee quickly wrote to Pigott that doing so will cause Flatter to become even more aggressive and threatening towards her.

71.     Ms. Lee communicated Pigott's request to Collins and expressed her well-founded concerns.  Collins did nothing.  Pigott berated Ms. Lee for "worrying" and told her to stop "complaining."

72.     On June 30, 2015, a Fox internal alert misspelled Hilary Clinton's last name and Ms. Lee was forced to listen as Flatter yelled throughout the newsroom that Hilary Clinton, is Hillary "Clit-on."

73.     Flatter repeatedly mocked Secretary Clinton's name throughout the shift and looked over at Ms. Lee each time he shouted this horrific slur.

74.     Ms. Lee wrote to Davis about the incident and begged him to schedule her on shifts without Flatter.

75.     Appallingly, the next day, July 1, 2015, Ms. Lee received an email from Collins stating that Fox was unable to "adjust her shift" and she must be alone with Flatter during the evening shift.

**Flatter Physically Threatens Lee Again**

76.     With no other options, Ms. Lee reported to the newsroom for her shift on the evening of July 1, 2015.

77.     After his midnight broadcast, Flatter emerged from his booth, screaming and cursing like a madman – refusing to calm down or respond coherently to co-workers.

78.     Unsurprisingly, Flatter singled out Ms. Lee and ran over to loom his large body over her petite 5'2" frame.

79.     Unhinged, Flatter screamed and shouted in such a menacing manner, just inches from her face, that male co-workers intervened to get Ms. Lee physically away from Flatter.

80.     Irate, Flatter stormed out of the newsroom, continuing to curse and yell.

81.     Later, her co-workers made sure Ms. Lee was escorted out of the building at the end of her shift, unsure where Flatter was or if he would reemerge.

82.     Late in the afternoon of July 2, 2015, Fox told Ms. Lee that they were making adjustments to her shifts for the remainder of the week.

**Flatter and Fox Separate**

83.     On July 6, 2015, Fox informed Ms. Lee that Flatter was leaving.

84.     The following week, Davis called Ms. Lee into his office.  Ms. Lee expected Davis to apologize for the harm and suffering that Flatter caused her and to reassure her that things will be better going forward.

85.     Sadly, Davis barked at Ms. Lee that she (i) cannot ask any questions about Flatter; (ii) cannot mention Flatter's name again; (iii) must cancel any further meetings with executives outside of Radio about Flatter; and (iv) snidely remarked, "Are you happy now?" and "Will you stop causing problems now?"

86.     In shock and speechless, Ms. Lee left Davis's office and returned to her duties as the only female shift editor.

87.     Ms. Lee learned that although Flatter no longer was reporting to work, Fox intended to pay his remaining funds pursuant to his contract.

88.     Around this time, Pigott ceased working at Fox News Radio.

**Fox Severely Retaliates Against Ms. Lee**

89.     From the moment Ms. Lee first complained to Fox about Flatter, through the present, Ms. Lee was subjected to unrelenting and horrific retaliation.

90.     In addition to the aggressive, demeaning and gender motivated bias inflicted on Ms. Lee by Flatter; she suffered blatant retaliation for speaking out.  By way of example only,

after Ms. Lee sought assistance from HR, Davis and Pigott openly began to ostracize her in front of co-workers.  On numerous occasions, Davis and Pigott refused to speak to Ms. Lee and otherwise acted as if she was not present in the newsroom.

91.     For almost 10 years, Ms. Lee performed at an exceptionally high level and received stellar performance reviews.  After she complained about Flatter, however, Davis, Pigott and Weinbloom subjected her to repeated criticism and scrutiny.

92.     Indeed, after Flatter left Fox, Davis and Weinbloom engaged in heightened micromanagement of Ms. Lee's daily activities, including a new focus on what time Ms. Lee arrived for her shifts.  For the first time in 10 years, Weinbloom chastised Ms. Lee in front of the newsroom because she arrived late to work late by fifteen minutes.  Weinbloom threatened to discipline her.  Although her co-workers regularly arrived late to work, some by more than forty-five minutes, Weinbloom failed to subject them to similarly situated micromanagement.

93.     After more than 10 years of stellar reviews, Ms. Lee received her first bad review. Unsurprisingly, this review occurred in September 2015, just weeks after Flatter was dismissed. Also for the first time, Davis conducted her review in his office with the door closed.

94.     Subsequent to Flatter's departure and through the present, Davis and Weinbloom looked for opportunities to remind Ms. Lee that she was "lucky" to have a job.

95.     After Flatter left, Davis insisted that Ms. Lee undergo a "sexual harassment training" program through HR and lorded over Ms. Lee while she completed the training on her computer.

96.     As evident from Ms. Lee's repeated complaints, the senior executives at Fox, including Collins, Brandi, Pigott, Davis and Weinbloom chose to acquiesce to Flatter's

demeaning and disparaging treatment of female employees for over two years rather than holding him accountable.

97.     Ms. Lee was forced to endure greater harm while these executives failed to take any corrective action, and inexplicably, victimized a second time for daring to speak out.

<u>**FIRST CAUSE OF ACTION**</u>
**(Discrimination and Hostile Work Environment in Violation of the NYSHRL)**
***Against All Defendants***

98.     Plaintiff hereby repeats, reiterate and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

99.     Defendants have discriminated against Plaintiff on the basis of her gender in violation of the New York State Human Rights Law ("NYSHRL") by, *inter alia*, denying Plaintiff equal terms and conditions of employment available to similarly-situated male employees, including, but not limited to, by subjecting Plaintiff to less preferable treatment based on her gender.

100.     Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment that has included, among other things, pervasive discrimination committed against Plaintiff.

101.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

102.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
***Against All Defendants***

103.    Plaintiff hereby repeats, reiterate and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

104.    Defendants have retaliated against Plaintiff because she engaged in protected activity in violation of the NYSHRL by, *inter alia*, terminating Plaintiff.

105.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

106.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

## THIRD CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL)
***Against Defendants Mitch Davis, Hank Weinbloom and Denise Collins***

107.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

108.    Defendants Davis, Weinbloom and Collins knowingly and maliciously aided and abetted the unlawful employment practices, discrimination and retaliation committed against Plaintiff in violation of the NYSHRL.

109.    As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past income, future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

110.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, emotional distress, for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### (Discrimination and Hostile Work Environment in Violation of the NYCHRL)
### *Against All Defendants*

111.    Plaintiff hereby repeats, reiterate and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

112.    Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by, *inter alia*, denying Plaintiff equal terms and conditions of employment available to similarly-situated male employees, including, but not limited to, subjecting Plaintiff to less preferable treatment based on her gender.

113.    Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment that has included, among other things, pervasive discrimination committed against Plaintiff.

114.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

115.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

116.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
#### *Against All Defendants*

117.    Plaintiff hereby repeats, reiterate and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

118.    Defendants have retaliated against Plaintiff because she engaged in protected activity in violation of the NYCHRL by, *inter alia*, terminating Plaintiff.

119.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

120.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

121.    Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Disability Discrimination and Hostile Work Environment in Violation of the NYSHRL)
#### *Against All Defendants*

122.    Plaintiff hereby repeats, reiterate and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

123.    Defendants have discriminated and are continuing to discriminate against Plaintiff on the basis of her disability and/or perceived disability in violation of the NYSHRL, by *inter alia*, denying her equal terms and conditions of employment, including, but not limited to, referring to her as "useless," as the "invalid," mocking her specially designed chair to help

reduce chronic pain, and otherwise denying her employment opportunities because of her disability and subjecting her to a hostile work environment based on her disability.

124.    Defendants Davis, Weinbloom and Collins aided and abetted the discriminatory conduct committed against Plaintiff in violation of the NYSHRL.

125.    As a direct and proximate result of the continuing unlawful and discriminatory conduct of Defendants, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of reputation, compensation and benefits, for which she is entitled to an award of monetary damages.

126.    As a direct and proximate result of the continuing unlawful and discriminatory conduct of Defendants, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

### SEVENTH CAUSE OF ACTION
**(Disability Discrimination and Hostile Work Environment in Violation of the New York City Human Rights Law)**
***Against All Defendants***

127.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

128.    Defendants have discriminated and are continuing to discriminate against Plaintiff on the basis of her disability and/or perceived disability in violation of the NYCHRL, by *inter alia*, denying her equal terms and conditions of employment, including, but not limited to, referring to her as "useless," as the "invalid," mocking her specially designed chair to help reduce chronic pain, and otherwise denying her employment opportunities because of her disability and subjecting her to a hostile work environment based on her disability.

129.    As a direct and proximate result of the continuing unlawful and discriminatory conduct of Defendants, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of reputation, compensation and benefits, for which she is entitled to an award of monetary damages.

130.    As a direct and proximate result of the continuing unlawful and discriminatory conduct of Defendants, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

131.    The continuing unlawful and discriminatory actions of Defendants constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

B.    An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful conduct, and to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff;

C.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State and City of New York;

D.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, emotional pain and suffering and any other physical and mental injuries;

F.      An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.      An award of punitive damages;

H.      An award of costs that Plaintiff has incurred in this action, as well as reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  May 22, 2017
       New York, New York

                               Respectfully submitted,

                               **WIGDOR LLP**

By:
                                Douglas H. Wigdor
                                Jeanne M. Christensen
                                Michael J. Willemin

                               85 Fifth Avenue
                               New York, NY  10003
                               Telephone:  (212) 257-6800
                               Facsimile:  (212) 257-6845
                               dwigdor@wigdorlaw.com
                               jchristensen@wigdorlaw.com
                               mwillemin@wigdorlaw.com

                               *Counsel for Plaintiff*